UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**GARY JOE LAUNDERVILLE** and
**TERESA MARIE LAUNDERVILLE**,

Debtors.

Case No. **11-61117-13**

# MEMORANDUM of DECISION

At Butte in said District this 14th day of October, 2011.

In this Chapter 13 bankruptcy, after due notice, a hearing was held October 4, 2011, in Butte on confirmation of Debtors' Fourth Amended Chapter 13 Plan filed September 29, 2011. The Standing Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana, was present at the hearing. Debtors were represented at the hearing by Daniel R. Sweeney of Butte, Montana; Boomer Oil & Gas, Inc. ("Boomer Oil") was represented at the hearing by Eli J. Patten of Billings, Montana; and Peoples Bank of Deer Lodge was represented at the hearing by John H. Grant of Helena, Montana. Debtor Gary Joe Launderville, Jack McLeod, William Bandy and Sidney Purinton testified. Exhibits 2, 3, 4 and 5 were admitted into evidence without objection.

The Chapter 13 filed a consent to Debtors' Plan on September 30, 2011. In addition, Peoples Bank of Deer Lodge filed an objection to confirmation of Debtors' Third Amended Chapter 13 Plan. Debtors filed their Fourth Amended Chapter 13 Plan to cure the Peoples Bank of Deer Lodge's objection. Counsel for Peoples Bank of Deer Lodge confirmed at the hearing

1

that Debtors' Fourth Amended Chapter 13 Plan did in fact cure Peoples Bank of Deer Lodge's objection to confirmation as Peoples Bank of Deer Lodge's claim will be paid in accordance with its proof of claim. Boomer Oil has the sole remaining objection to confirmation of Debtors' Fourth Amended Chapter 13 Plan.

BACKGROUND

Debtors own a 227.44 acre ranch located in a rural, agricultural area of southern Powell County, Montana. Debtors also own a separate residence in Deer Lodge, Montana. Thus, the ranch in not Debtors' primary residence. Debtors' ranch is encumbered by Boomer Oil's lien, which Boomer Oil asserts is $445,869.73.

Debtor Gary Joe Launderville testified that Debtors have attempted to sell their ranch as a single parcel for 5 years, to no avail. Notwithstanding their failed attempts to sell the ranch, Debtors propose, through their Fourth Amended Chapter 13 Plan, to pay Boomer Oil in full, plus 6% interest, within 24 months.

In particular, Debtors propose to pay Boomer Oil in full by subdividing their ranch into nine separate parcels. The four proposed sites lying westerly of the entry road to the residential property shall be designated as tracts, 1, 2, 3 and 4 running from the West to the East. Debtors propose to sell Tract 1 for $115,000 and further propose to sell Tracts 2, 3 and 4 for $95,000 each. The tract immediately to the East of the Residential entry road will be identified as Tract 5 and shall be sold with the existing improvements for $235,000. The tract lying immediately East of Tract 5 will be identified as Tract 6 and will be sold for $80,000. The two tracts labeled the North-East parcels, Tracts 7 and 8, shall be marketed for $95,000 and $100,000, respectively. The remaining tract, Tract 9, is considered questionable as a residential site and shall be listed for

sale at a price of $50,000.

Debtors will be able to subdivide their ranch with the expertise and financial assistance of Jack McLeod ("McLeod"). McLeod is a licensed real estate broker and a certified general appraiser. McLeod is also a developer who has done 26 subdivisions since 1973. Debtors retained McLeod in May of 2011 to analyze their ranch property and ascertain its highest and best use. McLeod testified that the best use of Debtors' ranch was to reduce the parcel size for residential use. McLeod's proposed division of the ranch will maintain the property's agricultural status but will avoid the department of environmental quality's sanitation requirements. McLeod has agreed to front all development fees and costs associated with converting the ranch into 9 parcels, in exchange for 20% of the gross sales proceeds of each lot.

McLeod and Debtors believe Debtors can sell the nine separate parcels for $960,000. Subtracting McLeod's proposed fee of 20% would leave net proceeds of $768,000 with which to pay closing costs and other associated fees, and also pay Boomer Oil in full. If Debtors cannot sell the 9 parcels within 24 months, Debtors have agreed to surrender the remaining lots to Boomer Oil, with no further payment to McLeod. Thus, McLeod has agreed to bear the risk of loss with respect to subdividing the property.

William Bandy, a certified general appraiser, did an appraisal of Debtors' ranch and concluded that the value of Debtors' ranch, as a single unit and as of June 20, 2011, was $525,000 with a market exposure time of twelve months. Debtors do not dispute Bandy's appraisal.

Boomer Oil is an oversecured creditor. Boomer Oil, nevertheless, objects to Debtors' proposed subdivision, arguing:

3

1. Mont. Code Ann. § 76-3-612 provides that "[t]he subdivider shall submit with the final plat a certificate of a title abstracter showing the names of the owners of record of the land to be subdivided and the names of lienholders or claimants of record against the land and **the written consent to the subdivision by the owners of the land, if other than the subdivider, and any lienholders or claimants of record against the land**." (emphasis added).

2. In order for Debtors and Mr. McLeod to subdivide the subject real property and obtain final plat approval from Powell County, Boomer and the other secured parties must consent in writing to the subdivision of the real property. Mont. Code Ann. § 76-3-612.

3. Boomer will not consent to the subdivision of the real property, thus making final plat approval an impossible act.

## APPLICABLE LAW

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *In re McSparran*, 410 B.R. 664, 668 (Bankr. D. Mont. 2009); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241 (Bankr. D. Mont. 2006).

Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Therefore, the Debtors have the burden of proof on all elements of confirmation. *Meyer v. Hill (In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001). This Court considers the Chapter 13 Trustee's consent to confirmation as significant weight on the side of Debtors' burden of proof favoring confirmation.

The relevant provisions of 11 U.S.C. § 1325 read as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if--

4

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan--

> (A) the holder of such claim has accepted the plan;
>
> (B)(i) the plan provides that--
>
>> (I) the holder of such claim retain the lien securing such claim until the earlier of--
>>
>>> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>>>
>>> (bb) discharge under section 1328; and
>>
>> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
> (iii) if--
>
>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

5

>>(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

>(C) the debtor surrenders the property securing such claim to such holder;

(6) the debtor will be able to make all payments under the plan and to comply with the plan;

(7) the action of the debtor in filing the petition was in good faith;

(8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation; and

(9) the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308.

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--

>(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

>(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Boomer Oil's objection to confirmation only references §§ 1322(b)(2) and 1325(a)(5). The objection does not reference any other provisions of § 1325. For the reasons discussed below, the Court finds no merit in Boomer Oil's objection.

To start, the Court finds § 1325(a)(5)(B)(ii) is satisfied. Debtors' Plan's provision for payment of Boomer Oil's claim in full, with interest, and absent any evidence to the contrary, provides for payments to secured creditors totaling no less than the present value of their claims, and therefore that the Plan satisfies § 1325(a)(5)(B)(ii).

Similarly, § 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan." Debtors have the burden of proving that their Plan has a reasonable chance of success. *In re Hungerford*, 19 Mont. B.R. 103, 117 (Bankr. D.Mont. 2001); *In re Schaak*, 17 Mont. B.R. 349, 357 (Bankr. D. Mont. 1999) (Chapter 12 feasibility test). In *Hungerford* the Court noted that in a Chapter 11 case a bare proposal to pay upon the sale of property does not necessarily satisfy the feasibility requirement of § 1129(a)(11) as a matter of law. 19 Mont. B.R. at 117, citing *In re Thomas*, 241 F.3d 959, 963 (8th Cir. Ark. 2001). However, the court in *Thomas* recognized that "drop dead" provisions are entitled to be considered by a bankruptcy court when evaluating a plan's prospects for success. 241 F.3d at 963.

Debtors' Plan has a "drop dead" provision providing for the surrender of Boomer Oil's collateral in the event Debtors have not repaid Boomer Oil in full within 24 months. The inclusion of the "drop dead" provision in Debtors' Plan weighs in favor of a finding of feasibility.

Debtors' plan payment is $80. The Trustee's consent implies Debtors have made all plan

payments to date, and that they will be able to make their future plan payments. The Court thus finds Debtors will be able to make the monthly $80 payments.

Section 1322(b)(8) allows a plan to be partially funded through the sale of property of the estate or property of a debtor, but issues of good faith, feasibility and adequate protection arise when a plan proposes only token monthly payments to the secured creditor. *In re Lindsey*, 183 B.R. 624, 627 (Bankr. D. Idaho 1995). The Debtors' Plan in the instant case proposes no monthly payments on Boomer Oil's secured claim, so Debtors have the burden to produce evidence as to past marketing efforts, the state of the market for the subject asset, current sale prospects, the existence and maintenance of the market for the subject asset, the existence and maintenance of any equity cushion, and all other circumstances that bear on whether the creditor will see its way out of the case financially whole. *Lindsey*, 183 B.R. at 627, quoting *In re Newton*, 161 B.R. 207, 217-18 (Bankr. D. Minn. 1993).

*In re Gavia*, 24 B.R. 573, 574 (9th Cir. BAP 1982), the BAP affirmed the bankruptcy court's finding that debtors failed to satisfy the feasibility requirement. However, *Gavia* is distinguishable factually from the instant case because the Gavias had a limited equity of only $8,000 to pay all their creditors, whose debt almost equaled their equity and which they proposed to pay in full, and no evidence existed that Gavias had contacted a realtor, placed the home on the market or had any contact with any potential purchasers. 24 B.R. at 574. By contrast, in the instant case the Debtors have a proposal, with the backing of an experienced real estate developer, that will pay Boomer Oil if full. To that end, Debtors filed an application for McLeod's employment. McLeod's testimony concerning the benefits of subdividing the ranch was essentially uncontroverted.

Boomer Oil's appraiser, Bandy, testified that the real estate market in Powell County is either steady or slightly declining.  However, no facts exist in the record to establish that sale prospects will remain poor through the Plan's "drop dead" date, especially where Debtors are proposing to divide the property into smaller and more saleable parcels.

On the issue of equity cushion, Boomer Oil's own appraiser values the ranch as a whole at $525,000, yet Boomer Oil is only owed $445,869.73.  Debtors thus have almost $80,000 equity in the ranch.  The interest rate on Debtors' obligation to Boomer Oil is 6% and the principal balance still owed is $350,000.  Interest on the obligation is thus accruing at the rate of $21,000 per year.  Boomer Oil's own appraiser establishes that Boomer Oil is protected by an equity cushion as of the drop dead date of at least $37,000, which the Court finds constitutes adequate protection under the particular facts of this case.

Summarizing feasibility, the Debtors' marketing efforts, current sale prospects and substantial equity cushion throughout the case weigh in favor of a finding that the Debtors' Plan is feasible under *Lindsey*, 183 B.R. at 627 (quoting *Newton),* while Debtors' lack of monthly payments to the secured creditors, and state of the market for the subject asset weigh against.  On balance, the Court finds that the Debtors have satisfied their burden under § 1325(a)(6) that they will be able to make their monthly payments under the plan and to comply with the Plan, and that because of the "drop dead" clause in their Plan and substantial equity cushion for Boomer Oil, they have shown that creditors will see their way out of the case financially whole.

Notwithstanding the foregoing, citing §§ 3125(a)(5) and 1322(b), Boomer Oil argues that Debtors' Plan violates 11 U.S.C. § 1322(b)(2) by exceeding the extent with which the rights of a secured creditor may be modified.  As discussed earlier, this Court finds that Debtors' Plan does

9

not violate § 1325(a)(5). The Debtors' Plan provides for a "cure-by-sale" of Debtors' default to Boomer Oil, which this Court decided may satisfy the confirmation requirements of 11 U.S.C. § 1322(b)(5). *In re Siegfried*, 16 Mont. B.R. 289, 301 (Bankr. D. Mont. 1997). The United States District Court for the District of Montana has held that a debtor's default may be cured by sale of a residence as in *Siegfried. In re Murphy-Reiner*, 19 Mont. B.R. 141, 143-44 (D. Mont. 2001).

As in *Siegfried*, the Debtors' Plan provides for the payment in full of Boomer Oil's allowed claim, including interest, through the sale of their security. *Siegfried*, 16 Mont. B.R. at 302. The Debtors' "drop dead" date is a year shorter than the 3 year term in *Siegfried*. *Id.* at 291, 302. During the term of the Plan the record shows that Boomer Oil is provided adequate protection through a substantial equity cushion over and above the allowed secured claim by the value of the Debtors' ranch. Finally, as in *Siegfried* the Debtors have applied for and were granted approval of employment of McLeod. 16 Mont. B.R. at 301. Based upon the above, this Court concludes that the Debtors' Plan satisfies the requirements set forth in *Siegfried* and *Murphy-Reiner* for cure-by-sale of Debtors' defaults under their loan from Boomer Oil.

The Court also finds that Debtors' Plan was proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1325(a)(3). To determine whether a plan has been proposed in bad faith the Court must review the "totality of the circumstances". *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir. 1999); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994); *In re Gress*, 257 B.R. 563, 567, 18 Mont. B.R. 30, 34 (Bankr. D. Mont. 2000). In *Leavitt*, the Ninth Circuit held that in determining whether a Chapter 13 plan is proposed in good faith, a bankruptcy court should consider (1) whether debtors misrepresented facts in their plan or unfairly manipulated the Code, (2) the debtors' history of filings and dismissals, (3) whether the

10

debtors intended to defeat state court litigation, and (4) whether egregious behavior is present. *Leavitt*, 171 F.3d at 1224-25 (9th Cir. 1999); *Drummond v. Cavanagh (In re Cavanagh)*, 250 B.R. 107, 114 (9th Cir. BAP 2000). None of the aforementioned factors have been raised in this case. As mentioned above, Debtors' Plan was proposed in good faith and not by any means forbidden by law. In sum, Debtor's Fourth Amended Plan complies with all provisions of 11 U.S.C. § 1325.

Section 1325 specifically directs that the Court "shall confirm" a plan that complies § 1325. Debtors' Plan complies with such provisions, and thus, this Court "shall confirm" Debtors' Fourth Amended Plan. Notwithstanding, Boomer Oil claims it "will not consent to the subdivision of the real property, thus making final plat approval an impossible act."

The issue of whether Boomer Oil will or will not consent to subdividing Debtors' ranch is premature at this juncture. The Court would merely note that § 1327(a) of the Bankruptcy Code provides that the provisions of a confirmed plan "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). It is well settled that a bankruptcy court's confirmation order is a binding, final order, accorded full res judicata effect. *See In re Wolfberg*, 255 B.R. 879, 882 (9th Cir.B.A.P.2000); *In re Kelley*, 199 B.R. 698, 702 (9th Cir. BAP 1996); *Accord In re Heritage Hotel Partnership I*, 160 B.R. 374, 376-77 (9th Cir. BAP 1993), *aff'd*, 59 F.3d 175, 1995 WL 369528 (9th Cir.1995) (table). The principle that the confirmed plan is a binding final order accorded full res judicata effect is broadly applied. *See Wolfberg*, 255 B.R. at 882.

Any refusal by Boomer Oil to comply with the confirmation order, and in turn, Debtors'

11

confirmed Fourth Amended Chapter 13 Plan, would be looked upon with disdain by this Court. Under such a scenario, this Court would entertain a request by Debtors to appoint someone in Boomer Oil's stead, such as the Chapter 13 Trustee, to sign the necessary consent for Debtors to obtain subdivision approval. In light of the foregoing, the Court will enter separate Orders as follows:

IT IS ORDERED that Boomer Oil & Gas, Inc.'s continuing objection to confirmation of Debtors' Fourth Amended Chapter 13 Plan is DENIED; and the Court will enter a separate Order confirming Debtors' Fourth Amended Chapter 13 Plan filed September 29, 2011.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana